**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIE J. WALTON,** | ) | |
| | ) | |
| *Plaintiff*, | ) | **Case No. 13 C 2580** |
| | ) | |
| **v.** | ) | **Judge Marovich** |
| | ) | |
| **N.I.G.P.P. , et al.,** | ) | **Magistrate Judge Brown** |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

The Defendants, the National Integrated Group Pension Plan ("NIGPP" or "Plan") and its Board of Trustees move for summary judgment on all claims asserted by the Plaintiff Willie J. Walton.   The undisputed facts demonstrate that Mr. Walton has been offered all benefits due to him by the Plan, and the other counts of his Complaint fail to state a cognizable claim.

**<u>Background Facts</u>**

The Defendant National Integrated Pension Plan (NIGPP) is a multi-employer defined benefit pension plan governed by the Defendant Board of Trustees.  SMF ¶ 1.  A multi-employer pension plan is, by definition, a plan maintained pursuant to one or more collectively bargained agreements between one or more unions and more than one employer.  29 U.S.C. § 1002(37).  Employers that agree with the relevant union to participate must enter into a "written agreement" specifying "the detailed basis on which

such payments are to be made." 29 U.S.C. 186(c); employer participating in the NIGPP enter into a Participation Agreement with the Plan, SMF ¶ 3. Contributions made by employers are held in common trust by the Plan for payment of benefits to all participants. SMF ¶ 5.

The Plaintiff worked for an NIGPP participating employer, American Steel Container Corporation ("ASCC"), from October 1, 1988 through December 31, 1989. SMF ¶ 4. As a result, the Plaintiff earned one (1.0) benefit unit with the Plan due to the one year of contributions that ASCC made on his behalf. SMF ¶ 4. No other participating employer ever made contributions on Mr. Walton's behalf to the NIGPP and, accordingly, Mr. Walton earned no additional benefit units with the Plan. SMF ¶ 6. During this time period, pursuant to the Participation Agreement between ASCC and the Plan, a plan participant would be entitled to $8.10 in monthly pension annuity benefit for each benefit unit earned. SMF ¶ 5.

American Steel Container Corporation withdrew from participation in the NIGPP on September 30, 1993. At that time, the Plan documents provided that plan participants that had earned more than one benefit unit, but were not yet vested, would be entitled to a pension benefit if the withdrawing Employer's proportionate share of the Plan's total assets was greater than the amount required to pay the pensions of the withdrawing Employer's vested participants. SMF ¶ 7. As a result of this Plan provision, the Plaintiff was treated as vested with respect to the limited pension that he had earned with his one benefit unit (*i.e.*, $8.10 per month). SMF ¶ 7. Accordingly, on March 18, 1994, the Plan informed the Plaintiff that he would be eligible for a pension of $8.10 per month

2

beginning at age 65.  SMF ¶ 8.  After the Plaintiff requested a pension estimate on or about early 2011, the Plan reiterated this information.  SMF ¶ 9.

The Plaintiff applied for a pension from NIGPP in January 2012, in conjunction with his 65th birthday.  SMF ¶ 12.   The NIGPP processed Mr. Walton's application and, in February 2012, began sending him a check for $8.10 per month.  SMF ¶ 13.  The Plaintiff did not cash that check, or any other check from the NIGPP;  informed the Plan that he did not want the check; and insisted the Plan stop sending it to him or otherwise contacting him.  SMF ¶¶ 14, 20, 22.   Pursuant to that instruction, since April 2012, the Plan has been holding the Plaintiff's benefit checks and has informed the Plaintiff that it will resume payment when he is willing to receive the checks.  SMF ¶ 21.

## <u>Argument</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *White v. Employee Ret. Plan of Amoco Corp*., No. 96 CV 4298, 2000 WL 1221635 (N.D. Ill. Aug. 21, 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

I.     **Walton's Claim for Benefits (Count I) Fails Because The Plan Has Attempted to Provide Him With the Pension He is Due.**

In his Complaint, the Plaintiff appears to state a claim for denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).  However, the undisputed facts show that the Plan, in

fact, did not deny his claim for benefits.   To the contrary, the Plan approved his claim for

a pension annuity, and has attempted repeatedly to send him the $8.10 monthly annuity

that he earned due to his service with the ASCC.  SMF ¶¶ 13-14, 19-20.   The Plaintiff,

however, has refused to accept the checks.  SMF ¶¶ 14, 20.  If the Plaintiff would like the

$8.10 monthly benefit, he need only permit the Plan to send the check, and cash it.

      To the extent that Plaintiff is claiming that he is owed some pension beyond the

$8.10 per month annuity offered by the Plan, that claim is without factual support

sufficient to withstand a motion for summary judgment.  As shown in the attached sworn

declaration of the Plan administrator, the Plaintiff earned only one benefit unit through

his work of little more than one year with one participating employer in the Plan.  SMF

¶¶ 4-6, 23.  The Participation Agreement with that employer plainly states that employees

of that employer earn pension benefits at the level of $8.10 per month for each benefit

unit earned.  SMF ¶ 5.  Therefore, there can be no reasonable dispute regarding whether

this is the proper annuity payment to the Plaintiff.

      Moreover, if the Plaintiff is claiming that he earned pension with some other

employer, or that his employment with ASCC entitles him to some larger benefit, then his

claim is deficient for a second reason:  he failed to exhaust his administrative remedies

with the Plan.  SMF ¶¶ 15, 18.  An ERISA plan participant must exhaust his

administrative remedies within the Plan prior to bringing suit for denial of a claim.  *Zhou*

*v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002); *Doe v. Blue Cross &*

*Blue Shield United of Wis.*, 112 F.3d 869, 873 (7th Cir. 1997).   Because Plaintiff never

even presented such a claim to the Board of Trustees pursuant to the provisions in

Section 9.05 of the Plan, he cannot proceed directly to federal court. Judgment is due to the Plan.

 If, on the other hand, Plaintiff is claiming that he should be permitted to take his benefit in a single sum payment form, rather than an annuity form—which is the claim he presented to the Plan's Board of Trustees, *see* SMF ¶16—the Board of Trustee's determination is subject to review on an abuse of discretion standard, as the NIGPP Plan document gives the Board "the power to resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances." *See* SMF ¶ 15; *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 814-15 (7th Cir. 1997) (where Plan language provided administrator was "responsible for interpretations of the Plan," court defers to decisions of administrator unless shown to be "arbitrary and capricious"). Here, given that the NIGPP's Rehabilitation Plan plainly and undisputedly revoked the Single Sum for Small Pension benefit option in 2009, it cannot be abuse of discretion for the Board of Trustees to have denied that option to the Plaintiff when he requested it in 2012.

## II. The Plaintiff Has Not Stated a Claim for Fiduciary Breach (Count IV).

In Count IV of his Complaint, the Plaintiff claims that the Plan and/or its Board of Trustees engaged in "malfeasance fiduciaries." The only allegation presented in support of this claim is that "if Defendants was in the right they would explain to Plaintiff in writing or on paper how they came to such conclusion in Plaintiff benefit. And how he was vested." Even if a failure to respond to provide such a detailed explanation of benefit calculations could be construed as a breach of the fiduciary obligations set forth in

ERISA § 404, the Plaintiff's claim would still fail, as the indisputed facts show that the Plan in fact did explain this to the Plaintiff.  *See* SMF ¶ 19.[1]

### III.   Plaintiff Has Not Stated a Claim for Discrimination (Count V)

In Court V of his Complaint, Plaintiff attempts to assert a claim for "discrimination" based on the allegation that "Defendants also claim that Plaintiff is treated like vested so how can Plaintiff vested right covered under the Plan when Plaintiff is treated different."  The Plaintiff does not specify what anti-discrimination law he is relying on in this claim, nor does he identify any individual or group from which he is being treated differently or the basis on which he is allegedly being treated differently.

ERISA does contain an anti-discrimination provision that prohibits any person from discriminating "against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [specified laws], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan" or ERISA.  29 U.S.C. § 1140.  The Plaintiff does not allege that he was discriminated against on the basis of exercising any right under the Plan, or for the purposes of interfering with any such right.

---

[1] Moreover, this claim for fiduciary breach appears to be redundant to the claim for denial of benefits—that is, it appears that Walton is using a fiduciary breach claim to allege some error in his award of benefits.  A plaintiff cannot "bootstrap" a claim for denial of benefits into a fiduciary breach claim, as any remedy for such a denial must lie under ERISA Section 502(a)(1).  *Mers v. Marriott Int'l Grp. Accidental Death & Dismemberment Plan*, No. 95 C 7543, 1996 WL 219701 (N.D. Ill. Apr. 25, 1996).

The Plaintiff's allegations fail to state any cognizable discrimination claim against the Plan or its Trustees. Moreover, the undisputed material facts show that the Plan properly calculated and offered Plaintiff the limited vested benefit that he was entitled to under the terms of the Plan in effect at the time his employer withdrew for participation. SMF ¶¶ 4-6, 13. As the Plan did nothing more than properly apply its plan terms, the Plaintiff cannot survive summary judgment on this claim.

## IV. The Plaintiff's Remaining Claims Fail to State a Claim Upon Which Relief May Be Granted and Are Preempted by ERISA.

In the remaining Counts of his Complaint,[2] the Plaintiff purports to set forth a grab-bag of claims for corruption, breach of contract, conspiracy and harassment. None of these claims sets forth facts that would establish the elements of any of these claims.[3] More to the point, however, is that any of these claims would be pre-empted by ERISA, as the allegations in these Counts all relate to some perceived error or injustice in the calculation or payment of the Plaintiff's benefit level under the Plan. ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "This knocks out any effort to use state law, including state common law, to obtain benefits under such a plan." *Pohl v. Nat'l Benefits Consultants, Inc*., 956 F.2d 126, 127 (7th Cir. 1992). *See also Bowles v. Quantum Chem. Co*., 266 F.3d 622, 631 (7th Cir. 2001) (ERISA preempts breach of

---

[2] Namely, the second Count I, Count II, Count III and Count IV.

[3] There is no civil tort of "corruption."

contract claim where claim requires Court to interpret or apply terms of benefit plan). As such, Walton can have no claim against the NIGPP or its Trustees outside of those provided for by ERISA.

### Conclusion

For the foregoing reasons, the Defendants request that the Court enter summary judgment for the Defendants on all counts of the Plaintiff's Complaint.

Dated: January 13, 2014                    Respectfully Submitted,


_____/s/ Kathleen M. Keller_____
Kathleen M. Keller*
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, D.C. 20005
Phone: (202) 842-2600
fax (202) 842-1888
* Admitted *pro hac vice* under Local Rule 83.14.


_____/s/ Barry M. Bennett_____
Barry M. Bennett
Dowd, Bloch & Bennett
8 South Michigan 19th Floor
Chicago, IL 60603
Phone: (312) 372-1361
Fax: (312) 372-6599

## CERTIFICATE OF SERVICE

I certify that I will serve the attached Notice of Filing and Memorandum in Support of Motion for Summary Judgment on Behalf of Defendants N.I.G.P.P. and Its Board of Trustees on the following via the Court's CM/ECF system on January 13, 2014:

Lawrence D. Mishkin
Silver & Mishkin, LLC
400 Skokie Blvd. #850
Northbrook, IL 60062
Phone No. (847) 504-1450
Email: lmishkin@sandmlegal.com


/s/ Kathleen M. Keller
Kathleen M. Keller