UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WILLIE J. WALTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 13 C 2580 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| N.I.G.P.P., and N.I.G.P.P. | ) | |
| BOARD OF TRUSTEES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie J. Walton ("Walton") filed a *pro se* complaint. He seeks relief with respect to his pension benefits under the National Integrated Group Pension Plan ("NIGPP") or the "Plan"). Defendants NIGPP and NIGPP Board of Trustees (the "Trustees") have filed a motion for summary judgment. For the reasons set forth below, the Court grants defendants' motion for summary judgment.

**I.      Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir.

2012). In this case, plaintiff Walton did not file a response to defendants' statement of facts. The Court has carefully reviewed defendants' statement of facts and has deemed admitted only those asserted facts supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes.

The following facts are undisputed.

Plaintiff Walton turned 65 years of age in January 2012. Earlier in his life, from October 1, 1988 through December 31, 1989, he had been employed by American Steel Container Corporation ("American Steel").

At the time, American Steel was a signatory to a Collective Bargaining Agreement between it and the United Packinghouse, Food & Allied Workers Local 759. American Steel also signed a Participation Agreement with defendant NIGPP.

NIGPP is a multiemployer defined benefit pension plan governed by ERISA. Employers can participate in the NIGPP pension plan by signing both a collective bargaining agreement with a participating union and a participation agreement with NIGPP. Based on the terms of the respective collective bargaining and participation agreements, participating employers contribute to the Plan, and the contributions are held in common trust for the payment of benefits to participants. The Plan sets forth a claims procedure whereby participants can dispute benefit decisions or other rights under the Plan. Section 9.01 of the Plan states, in relevant part:

> The decisions of the Board in all matters pertaining to the administration of the Plan shall be final. The Board shall have the Power to resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances and the decisions of the Board in all such matters will be final.

(NIGPP at IX-1).

American Steel participated in NIGPP from 1967 until 1993. During that time, it made contributions on behalf of at least some of its employees. Walton earned one benefit unit service credit with NIGPP for his employment with American Steel.

American Steel withdrew from NIGPP in 1993. Under the Participation Agreement in effect at the time American Steel withdrew, the benefit level for each benefit unit earned by a participating employee was $8.10 per month. At the time that American Steel withdrew, the Plan stated that if the terminating employer's proportionate share of the plan's assets was greater than the amount required to pay pensions to vested participants of that employer, any excess would be used to provide a pension to certain participants who were not otherwise vested. The upshot was that Walton, whose benefit was not otherwise vested, would from that day forward be treated as vested for the pension level equivalent of one benefit unit.

No other participating employer ever contributed to NIGPP on behalf of Walton. Thus, he never accrued any additional benefit units under the Plan.

On March 18, 1994, NIGPP sent Walton a letter to inform him that he would be eligible for a pension of $8.10 per month when he turned 65 years of age. In early 2011, Walton requested an estimate of his NIGPP pension. NIGPP sent him a letter in which it stated that Walton's estimated pension was $8.10 per month. Walton did not contest these letters.

NIGPP is governed by a Board of Trustees, which is made up of three union trustees, three industry trustees and a public trustee (who votes only in the event of a tie). The Trustees are empowered to revise the Plan by majority vote. In 2009, the Board of Trustees adopted a "Rehabilitation Plan" due to the Plan's "critical" funding status under the Pension Protection Act of 2006. As part of the Rehabilitation Plan, the Plan eliminated a provision (the "Single Sum for Small Pension Option") that had previously allowed lump-sum, cash-out payments for small

pension benefits. Because of the 2009 change, the lump-sum payment option was not available to Walton when he turned 65.

When Walton turned 65 in January 2012, he applied for his NIGPP pension. NIGPP processed his application and, in February 2012, sent Walton a check for $8.10.

Walton, in turn, informed NIGPP that he did not want the $8.10 check. He requested review. On March 30, 2012, Walton sent NIGPP a document in which he mentioned the Single Sum for Small Pension option and said he "should have the Right to choose that option which was not on the Application" he had filled out.

The Plan considered his letter an appeal to the Board of Trustees. The Board of Trustees affirmed the decision not to provide Walton the Single Sum option, because that option was eliminated from the Plan in 2009. Walton did not present to the Board of Trustees any other issues. For example, Walton did not argue that he was entitled to more than one benefit unit credit, that he had worked for other employers or that he was entitled to more than $8.10 per month. The Plan sent Walton multiple letters in which it explained the pension calculation to him.

Walton did not cash any of the checks NIGPP sent him. He repeatedly informed the Plan that he did not want to receive more checks and that he did not want the Plan to contact him. In response, NIGPP informed him that it could not remove him from mailings that it is required by law to send him. NIGPP agreed, however, not to send Walton more checks. It has been holding Walton's checks for him and has informed Walton that he may recommence his benefit at any time.

In his complaint, Walton alleged that he once worked for FMC Mojonnier Brothers. Later in the case, Walton stated that he worked for MBS. Neither MBS nor FMC Mojonnier Brothers ever participated in NIGPP or made contributions on behalf of Walton. Walton did not

earn any pension credit under NIGPP for his work for MBS or FMC Mojonnier Brothers. The only employer that ever contributed to NIGPP on behalf of Walton was American Steel.

## II. Summary Judgment Standard

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

Walton's *pro se* complaint is somewhat unclear, but the Court will begin with what is clear: Walton alleges that defendants "breach[ed] a contract," by which the Court (and the defendants) assume Walton means defendants violated the terms of an ERISA plan.

ERISA § 502 provides a cause of action for participants and beneficiaries of ERISA plans "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). A district court reviews a "denial of benefits challenged under § 1132(a)(1)(B) . . . under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of

the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Plan at issue in this case includes the discretionary language. Specifically, the Plan provides, in relevant part:

> The decisions of the Board in all matters pertaining to the administration of the Plan shall be final. The Board shall have the Power to resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances and the decisions of the Board in all such matters will be final.

(NIGPP at IX-1). Although no magic words are required, this language is sufficient to confer discretionary authority and trigger the arbitrary and capricious standard of review with respect to eligibility determinations and interpretations of the Plan. *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1019-1020 (7th Cir. 1998). Under the arbitrary and capricious standard, review is not a rubber stamp, but the administrator's decision will be upset only if it is "downright unreasonable." *Williams v. Aetna Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007). The Court "will uphold the Plan's determination 'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Williams*, 509 F.3d at 321-322 (quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005)). Ultimately, it matters not whether the Court reviews the decision *de novo* or applies the arbitrary and capricious standard, because the outcome would be the same either way.

Defendants have put forth undisputed evidence that it provided Walton the pension to which he was entitled under the terms of the Plan. Specifically, defendants have put forth undisputed evidence that Walton was employed by American Steel from October 1, 1988

through December 31, 1989, thereby earning himself one benefit unit service credit with NIGPP. Defendants have also put forth undisputed evidence that due to American Steel's 1993 withdrawal from NIGPP, Walton's single benefit unit service credit became vested. Defendants have put forth undisputed evidence that no other employer contributed to NIGPP on Walton's behalf. As a result, on Walton's 65th birthday, he became eligible for a pension of $8.10 per month, which defendants sent him, until he requested that they stop. It is also undisputed that, as of 2009, the Plan no longer allowed lump sum payments for small pensions. The record contains no evidence that Walton was entitled to any pension under the Plan other than the $8.10 per month pension he received (until he asked defendants to stop sending him checks, a decision which he can, at any time, reverse).

For these reasons, defendants are entitled to judgment as a matter of law on Walton's claim for denial of benefits under ERISA.

Walton's complaint also mentions "fiduciaries," and he seems to believe he did not receive sufficient written information about NIGPP's decision to grant him an $8.10 per month pension. Because there is a duty under ERISA to provide accurate information, misleading or misrepresenting the terms of a plan can constitute a breach of fiduciary duty, at least where there is an intent to deceive. *Tompkins v. Central Laborer's Pension Fund*, 712 F.3d 995, 1002-1003 (7th Cir. 2013). Negligence in fulfilling the duty to provide accurate information is not actionable. *Id.* Defendants have put forth undisputed evidence that they wrote to Walton, multiple times, to explain that he would be entitled to pension of $8.10 per month when he turned 65 and to explain how that amount was calculated. The record contains no evidence that defendants provided *any* inaccurate information, let alone evidence that inaccurate information

was provided with the intent to deceive Walton.  Accordingly, defendants are entitled to judgment as a matter of law on Walton's claim for breach of fiduciary duty.

Walton's complaint also mentions "discrimination."  Under ERISA § 510, it is "unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant . . . for the purpose of interfering" with his ERISA benefits.  29 U.S.C. § 1140.  To prevail, a plaintiff must show "specific intent to interfere" with the benefits.  *Teamsters Local Union No. 705 v. BNSF, LLC*, 741 F.3d 819, 826 (7th Cir. 2014).  This record contains no evidence that defendants discriminated against Walton with the specific intent to interfere with his benefits.  Accordingly, defendants are entitled to judgment as a matter of law.

The other three "claims" Walton asserts in his complaint are "corruption," "conspiracy," and "harassment."  These "claims" fail, as a matter of law, because they are preempted by ERISA.  ERISA contains "expansive" preemption provisions.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144.  The preemption extends not just to state statutes but also to state causes of action that "relate to" ERISA plans.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987).  In a nutshell:

> any state-law cause of action that duplicates, supplements, or supplants the
> ERISA civil enforcement remedy conflicts with the clear congressional intent to
> make the ERISA remedy exclusive and is therefore pre-empted.

*Davila*, 542 U.S. at 209.  Here, although Walton's complaint is not entirely clear, Walton seems to be alleging corruption in connection with the calculation of his pension.  He seems to be alleging conspiracy to withhold benefits, and he seems to be alleging harassment in that the defendants send him correspondence about his pension benefit.  These claims all relate to the

benefit plan and, therefore, fail as a matter of law, because they are preempted. *See Teamsters Local Union No. 705 v. BNSF, LLC*, 741 F.3d 819, 826 (7th Cir. 2014) (holding that there is no conspiracy claim under ERISA and that any state law equivalent is preempted).

For all of these reasons, defendants' motion for summary judgment is granted.

### IV. Conclusion

For the reasons set forth above, the Court grants defendants' motion for summary judgment. Case closed.

ENTER:

  _____
  George M. Marovich
  United States District Judge

DATED: March 24, 2014